UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

TREAVION PERSON,

                    Petitioner,                          Case No. 1:23-cv-1008

v.                                                       Honorable Paul L. Maloney

JAMES CORRIGAN,

                    Respondent.

_____/

## OPINION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.
Petitioner Treavion Person is incarcerated with the Michigan Department of Corrections (MDOC)
at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. On
January 10, 2019, following a three-day jury trial in the Ingham County Circuit Court, Petitioner
was convicted of first-degree home invasion, in violation of Mich. Comp. Laws § 750.110a(2);
larceny of a firearm, in violation of Mich. Comp. Laws § 750.357b; unlawful driving away of an
automobile (UDAA), in violation of Mich. Comp. Laws § 750.413; armed robbery, in violation of
Mich. Comp. Laws § 750.529; two counts of felon in possession of a firearm (felon-in-possession),
in violation of Mich. Comp. Laws § 750.224f; and two counts of possession of a firearm during
the commission of a felony (felony-firearm), in violation of Mich. Comp. Laws § 750.227b. On
February 20, 2019, the court sentenced Petitioner as a second habitual offender, Mich. Comp.
Laws § 769.10, to concurrent prison terms of 22 to 48 years for his armed robbery conviction; 16
years, 8 months to 30 years for his first-degree home invasion conviction; 3 years to 7 years, 6
months for his larceny of a firearm conviction; 3 years, 11 months to 7 years, 6 months for his

UDAA conviction; and 3 years to 7 years, 6 months for each of his felon-in-possession convictions. Petitioner also received the statutory two-year prison term for each of his felony-firearm convictions, to be served concurrently to each other and prior to the sentences for the predicate felonies.

On September 22, 2023, Petitioner, then represented by counsel,[1] filed his habeas corpus petition, raising the following four grounds for relief:

I.    The trial court violated Mr. Person's Constitutional right to present a defense, to a fair trial, and against unreasonable searches and seizures when it denied trial counsel's motion to suppress the search of Mr. Person's backpack and when it denied even holding an evidentiary hearing. The state appellate court's decision to the contrary resulted in an unreasonable determination of fact, and its adjudication was contrary to clearly established Constitutional law.

II.   The trial court violated Mr. Person's right to present a defense and right to confrontation by failing to allow trial counsel to explore the credibility and bias of Mr. Lomakoski by cross-examining him about the details of a federal court's finding that he had lied in order to search another Black male. Likewise, trial counsel was ineffective to the extent he did not specifically cite bias and a reasonable basis why he should have been allowed to fully cross-examine Mr. Lomakoski.

III.  Mr. Person is entitled to habeas relief based on the prosecutor's failure to disclose impeachment evidence of a prior conviction involving dishonesty of a key witness, jailhouse snitch Jermaine Blue. Alternatively, trial counsel

---

[1] Attorney Rachel K. Wolfe filed the § 2254 petition on Petitioner's behalf. When she did so, she also filed a motion to stay so that Petitioner could work out payment arrangements to retain her as counsel. (ECF No. 2.) Petitioner proposed two alternative remedies: (1) a stay of proceedings for 90 days; or (2) an order directing Respondent to answer the petition within 180 days, giving Petitioner an opportunity to resolve payment issues with attorney Wolfe. (*Id.*) In an order (ECF No. 6) entered on October 24, 2023, the Court granted in part and denied in part the motion. Specifically, the Court did not grant a stay, but noted that it would grant Petitioner's alternative request by directing Respondent to answer the petition in a separate order. (*Id.*) Attorney Wolfe subsequently filed a motion to withdraw as counsel (ECF No. 10), and Petitioner filed a response to that motion, requesting that new counsel be appointed or that this matter be held in abeyance (ECF No. 11). In an order (ECF No. 12) entered on January 12, 2024, the Court granted attorney Wolfe's motion to withdraw and denied Petitioner's motion to appoint counsel or to hold this matter in abeyance.

rendered constitutionally ineffective assistance by failing to impeach the jailhouse snitch with his prior conviction.

IV.     Mr. Person's constitutional rights to due process and the effective assistance of counsel were violated during the identification process because: (1) the photo lineup was unduly suggestive and unreliable, (2) there was no independent basis for the in-court identification, and (3) counsel should not have allowed the jury to see Mr. Person's tattoo after proofs were closed?

(§ 2254 Pet., ECF No. 1, PageID.8.) Respondent contends that Petitioner's § 2254 petition should be denied as meritless.[2] (ECF No. 13.) For the following reasons, the Court concludes that Petitioner has failed to set forth a meritorious federal ground for habeas relief and will, therefore, deny his petition for writ of habeas corpus. The Court will also deny Petitioner's motions for a hearing (ECF No. 17) and for relief from judgment (ECF No. 23).

## Discussion

### I.     Factual Allegations and Procedural History

The Michigan Court of Appeals described the events underlying Petitioner's convictions as follows:

On October 14, 2017, [Petitioner] and two other men, all masked and armed with guns, broke into the home of the victim, Carnesha Flowers (Flowers), where she lived with her children. Flowers awoke with a gun pointed toward her face and her children around her bed, crying. The men forced Flowers at gunpoint to open her safe, which contained cash and her handgun, which were then taken by the

---

[2] Respondent also argues that grounds II and III are procedurally defaulted. (ECF No. 13.) Respondent recognizes, however, that a habeas corpus petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *See* 28 U.S.C. § 2254(b)(2). Furthermore, the Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."); *see also Overton v. Macauley*, 822 F. App'x 341, 345 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."); *Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003) (citing *Lambrix*, 520 U.S. at 525; *Nobles v. Johnson*, 127 F.3d 409, 423–24 (5th Cir. 1997); 28 U.S.C. § 2254(b)(2)). Here, rather than conduct a lengthy inquiry into exhaustion and procedural default, judicial economy favors proceeding directly to a discussion of the merits of Petitioner's claims.

intruders. The men also took televisions, jewelry, clothing, shoes, and Flowers's Chevy Tahoe. While in the house, one of the men, whom Flowers later identified as [Petitioner], regularly removed his mask to speak. After the men left in Flowers's Tahoe, she called the police. Flowers told police that she could not identify the men, although she could recall [Petitioner's] face, who was then referred to as Suspect 2.

Three days later, Jamar Brown (Brown), the boyfriend of [Petitioner's] mother, called the police to report that his handgun had been stolen. Brown suspected that [Petitioner] had taken the gun and described [Petitioner's] clothing. The next day, October 18, 2017, Officer John David Lomakoski spoke briefly with [Petitioner] at his apartment, and then surveilled the residence while waiting for backup. Shortly thereafter, [Petitioner] left his apartment, wearing the exact clothing described by Brown, along with a red backpack, and crossed Saginaw Street. Officer Lomakoski reported to other officers via his radio that he had seen [Petitioner] cross the street against the signal, which caused the vehicles traveling the road to brake to avoid hitting him. Officer Lomakoski described [Petitioner's] actions as jaywalking. Michigan State Police Trooper Frederick Gibbs took the report, turned his patrol car around, drove directly up to [Petitioner] on the sidewalk, turned on the patrol car's emergency lights, exited the vehicle, announced that he was a police officer, and told [Petitioner] to stop; instead, [Petitioner] ran. Trooper Gibbs gave chase, saw [Petitioner] try to discard his backpack, and tackled him. [Petitioner] was arrested for resisting or obstructing a police officer. His backpack was searched incident to arrest and two guns were found, one belonging to Brown and one belonging to Flowers.

[Petitioner] was charged in Case No. 17-000957-FH ("the Brown case") for the crimes arising out of his possession and theft of Brown's gun and his resisting or obstructing arrest. While [Petitioner] was in jail awaiting trial on those charges, Flowers participated in a photographic lineup with Lansing Police Detective Ellen Larson. Flowers identified [Petitioner], stating that he looked like the person who had kept removing his mask. Subsequently, in the Brown case, [Petitioner] moved the trial court to suppress evidence of the guns found in his backpack, on the basis of an alleged unconstitutional search and seizure. The trial court denied the motion, determining that the arrest was lawful, which rendered the search incident to arrest constitutional.

While the Brown case was pending, Flowers received a letter from Jermaine Blue (Blue), a federal inmate, who had spent time in jail with [Petitioner] in late 2017. Blue, who knew Flowers, stated that [Petitioner] had bragged while in jail about breaking into Flowers's home and robbing her. Flowers, having learned [Petitioner's] name from Blue, found [Petitioner] on Facebook and verified her belief that [Petitioner] was the person who had removed his mask during the home invasion. Blue testified at trial that [Petitioner] had admitted to home invasion and robbery.

In March 2018, [Petitioner] was charged in the present case. After a preliminary examination, during which Flowers identified [Petitioner] again, [Petitioner] was

bound over on all of the charges of which he was eventually convicted (except for armed robbery, which had not yet been charged). Once in the circuit court, the prosecution moved to join the Brown case and the present case for trial. The trial court granted the motion over [Petitioner's] objection, and held, alternatively, that evidence from the Brown case relevant to the present case would be admissible even if the cases were not joined.

During the pretrial proceedings, [Petitioner] moved the trial court to suppress Flower's identification, both pretrial and during trial, arguing that the photographic lineup was unduly suggestive and that an independent basis for the identification was lacking. The trial court denied the motion. The prosecution then moved for leave to amend the felony information to add a charge of armed robbery, which the trial court granted over [Petitioner's] objections.

Shortly before trial was to commence in January 2019, the prosecution disclosed evidence to the defense that a federal court in an unrelated case, *United States v Demyers*, opinion of the United States District Court for the Western District of Michigan, issued June 6, 2017 (Case No. 1:17:CR:61), had discounted Officer Lomakoski's testimony, finding that Officer Lomakoski did not have a reasonable suspicion to search the defendant in that case, and had granted the defendant's motion to suppress. [Petitioner] then renewed his motion to suppress evidence of the guns found in his backpack, arguing that Officer Lomakoski had likely lied about seeing [Petitioner] cross against the signal and impede traffic. After reviewing Officer Lomakoski's preliminary examination testimony from the Brown case, watching Trooper Gibbs's patrol car dashcam video, considering the federal court decision, and hearing the parties' arguments, the trial court again denied the motion.

On the first day of trial, the trial court ordered the Brown case and the present case severed. [Petitioner] was then tried on and convicted of the charges as already noted. During the sentencing hearing, the trial court noted that it had granted the prosecution's motion to enter a nolle prosequi regarding the charges in the Brown case. [Petitioner] was sentenced as described. This appeal followed.

*People v. Person*, No. 347907, 2021 WL 5143814, at *1–2 (Mich. Ct. App. Nov. 4, 2021).

Jury selection for Petitioner's trial occurred on January 7, 2019. (Trial Tr. I, ECF No. 14-12.) Over the course of two days, the jury heard testimony from numerous witnesses, including Flowers, law enforcement officers, and Blue. (Trial Tr. II & III, ECF Nos. 14-14, 14-15.) On January 10, 2019, after about three hours of deliberation, the jury reached a guilty verdict. (Trial Tr. III, ECF No. 14-15, PageID.977.) Petitioner appeared before the trial court for sentencing on February 20, 2019. (ECF No. 14-16.)

5

Petitioner, with the assistance of counsel, appealed his convictions and sentences to the Michigan Court of Appeals, raising, *inter alia*, the four grounds for relief that he now asserts in his § 2254 petition. In a thorough opinion, the court of appeals affirmed Petitioner's convictions and sentences. *See Person*, 2021 WL 5143814, at *1. The Michigan Supreme Court denied Petitioner's application for leave to appeal on April 5, 2022. *See People v. Person*, 971 N.W.2d 632 (Mich. 2022). This § 2254 petition followed.

## II.    Pending Motions

### A.    Motion for Hearing

In a letter that the Court received from Petitioner on June 5, 2024, Petitioner requests that the Court hold a hearing. (ECF No. 17, PageID.4034.) Petitioner argues that the state court transcripts were "altered, falsified, and fabricated." (*Id.*) Specifically, Petitioner asserts that the transcript from January 10, 2019, was altered to reflect that only Jermaine Blue testified. (*Id.*) Petitioner argues, however, that Officer Lomakoski and Trooper Gibbs also testified, but that their testimony was stricken after the trial court ordered the Brown case to be severed. (*Id.*)

Petitioner also requests a hearing on the basis of what he asserts is new evidence that the prosecution withheld. (*Id.*, PageID.4035.) Specifically, Petitioner faults the State for withholding an actual forensic report and instead providing a "fabricated and falsified" report. (*Id.*, PageID.4036.) Petitioner also suggests that the prosecution committed misconduct by failing to show Blue's letter and its contents. (*Id.*)

Generally, habeas corpus actions are determined on the basis of the record made in the state court. *See* Rule 8, Rules Governing § 2254 Cases. The presentation of new evidence at an evidentiary hearing in the district court is not mandatory unless one of the circumstances listed in 28 U.S.C. § 2254(e)(2) is present. *See Sanders v. Freeman*, 221 F.3d 846, 852 (6th Cir. 2000). The Sixth Circuit Court of Appeals recently reviewed the requirements of the statute:

6

As the Supreme Court recently recognized, [the Antiterrorism and Effective Death Penalty Act] "restricts the ability of a federal habeas court to develop and consider new evidence." *Shoop* [*v. Twyford*], 142 S. Ct. [2037,] 2043 [(2022)]. Specifically, the statute allows the development of new evidence in "two quite limited situations": (1) when the claim relies on a "new" and "previously unavailable" "rule of constitutional law" made retroactive by the Supreme Court, or (2) when the claim relies on a "factual predicate that could not have been previously discovered through the exercise of due diligence." *Id*. at 2044 (quoting 28 U.S.C. § 2254(e)(2)). And even if a prisoner can satisfy either of those exceptions, to obtain an evidentiary hearing, he still must show by "clear and convincing evidence" that "no reasonable factfinder" would have convicted him of the crime charged. *Shinn* [*v. Ramirez*], 142 S. Ct. [1718,] 1734 [(2022)] (quoting 28 U.S.C. § 2245(e)(2)(A)(i), (ii)). Mammone does not purport to satisfy any of these stringent requirements for obtaining discovery or an evidentiary hearing: he does not rely on a new rule of constitutional law, he does not contend that the factual predicate for his constitutional claims could not have been previously discovered, and he points to no clear and convincing evidence that would cast doubt on the jury's verdict.

*Mammone v. Jenkins*, 49 F.4th 1026, 1058–59 (6th Cir. 2022).

Petitioner, like Mammone, does not rely upon any new rule of constitutional law, nor does his claim rely on a factual predicate that could not have been previously discovered through the exercise of due diligence. Moreover, even if Petitioner cleared those hurdles, he does not show by any evidence, much less clear and convincing evidence, that no reasonable factfinder would have convicted him. Under these circumstances, there is no basis to hold an evidentiary hearing. Accordingly, Petitioner's motion for a hearing (ECF No. 17) will be denied.

### B.    Motion for Relief from Judgment

Petitioner has also filed a motion for relief from judgment pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. (ECF No. 23.) Petitioner contends that he is entitled to Rule 60(b) relief because the prosecution brought fraud upon the trial court and "obtained a fraudulent[] conviction." (*Id.*, PageID.4119.) According to Petitioner, the prosecution certified a false CSI report. (*Id.*) He also suggests that the Ingham County Prosecutor's Office never obtained "a warrant authorization to charge [Petitioner], creating a jurisdiction[al] defect." (*Id.*, PageID.4120.)

He asks that the Court grant his Rule 60(b) motion and order the State to "retry or release [Petitioner] from custody." (*Id.*, PageID.4121.)

Petitioner's reliance on Rule 60(b) for this purpose is misplaced. Petitioner cannot rely upon Rule 60(b) to attack a state court criminal judgment. Instead, Rule 60(b) is meant to "relieve a party or its legal representative from a final [civil] judgment, order, or proceeding" in the federal courts for various reasons, including, but not limited to, fraud upon the court. *See* Fed. R. Civ. P. 60(b). Accordingly, Petitioner's motion for relief from judgment pursuant to Rule 60(b) (ECF No. 23) will be denied.

## III.   **AEDPA Standard**

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (internal quotation marks omitted) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotation marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

IV.     **Discussion**

A.      **Ground I—Suppression Error**

As his first ground for relief, Petitioner contends that the trial court erred when it denied his motion to suppress the search of his backpack and when it did not hold an evidentiary hearing regarding the motion to suppress. (§ 2254 Pet., ECF No. 1, PageID.8.)

Typically, Fourth Amendment search and seizure issues are not cognizable on habeas review under *Stone v. Powell*, 428 U.S. 465 (1976). In *Stone v. Powell*, the Supreme Court held that federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *Id.*; *see also Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012).

For the *Stone* doctrine to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state court determination of the claim to have been in error. *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

It is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial. Indeed, Petitioner acknowledges that he took advantage of that mechanism by filing a motion to suppress. Petitioner also has not alleged any facts showing that the State's mechanism had broken down—and he cannot. Petitioner filed his motion to suppress, which the trial court denied. Petitioner challenged

11

the denial of his suppression motion on direct appeal, and the court of appeals affirmed the denial of the suppression motion in a thorough discussion. *See Person*, 2021 WL 5153814, at *3–8.

Therefore, without something more, *Stone* bars this Court's consideration of the merits of Petitioner's Fourth Amendment claim. In his § 2254 petition, Petitioner suggests that the trial court denied him the right to present a defense and to a fair trial by denying the motion to suppress without holding an evidentiary hearing.

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quotation marks and citations omitted). A criminal defendant, however, "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006) (internal alterations and quotation marks omitted). Rather, "the Constitution permits judges to exclude evidence that is repetitive, only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues." *Holmes*, 547 U.S. at 326–27 (internal alterations and quotation marks omitted). Thus, evidentiary rulings abridge the right to a meaningful opportunity to present a defense if such rulings both "infring[e] upon a weighty interest of the accused" and are "arbitrary" or "disproportionate to the purposes they are designed to serve." *United States v. Scheffer*, 523 U.S. 303, 308 (1998).

Here, Petitioner does not explain, and the Court does not discern, what defense he was allegedly prevented from raising as a result of the denial of his motion to suppress without an evidentiary hearing. Petitioner's defense was that he was not the individual who committed the armed robbery, and that he only had the gun because he had bought it for personal safety a week

before his arrest. The denial of the motion to suppress without an evidentiary hearing did not prevent Petitioner from asserting that defense at trial.

Moreover, as the court of appeals held, the trial court did not err under state law by deciding the motion to suppress without an evidentiary hearing. *See Person*, 2021 WL 5143814, at *7–8. To the extent Petitioner takes issue with that determination, the extraordinary remedy of habeas corpus lies only for a violation of the Constitution. *See* 28 U.S.C. § 2254(a). As the Supreme Court has noted, "it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68. Thus, to the extent that Petitioner asserts that the state courts erred under Michigan law, he fails to state a claim upon which habeas relief may be granted. State courts are the final arbiters of state law, and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

For the foregoing reasons, Petitioner has failed to demonstrate either prong of *Stone v. Powell*, and he has failed to assert "something more" that would permit this Court to consider the merits of his Fourth Amendment argument. Accordingly, Petitioner's Fourth Amendment claim is barred on federal habeas review, and he is not entitled to relief with respect to habeas ground I.

### B.      Ground II—Confrontation Issue

In his second ground for relief, Petitioner contends that the trial court violated Petitioner's right to present a defense and to confrontation "by failing to allow trial counsel to explore the credibility and bias of Mr. Lomakoski by cross-examining him about the details of a federal court's finding that he had lied in order to search another Black male." (§ 2254 Pet., ECF No. 1, PageID.8.) Petitioner also contends that counsel was ineffective "to the extent he did not specifically cite bias and a reasonable basis why he should have been allowed to fully cross-examine Mr. Lomakoski."

13

(*Id.*) The Court considers Petitioner's underlying trial court error claim below and will consider his related assertion of ineffective assistance *infra* in Part III.E.

Petitioner raised this ground on direct appeal, and the court of appeals first noted that Petitioner had preserved his evidentiary arguments for review, but not his constitutional arguments because they were not raised at trial. *See Person*, 2021 WL 5143814, at *8. The court of appeals then noted that Petitioner's evidentiary arguments would be reviewed for abuse of discretion, and his constitutional arguments would be reviewed for plain error. *See id.*

The court of appeals then went on to note that the trial court "initially ruled that [Petitioner] would not be permitted to cross-examine Officer Lomakoski about the federal court's findings. During trial, however, [Petitioner] ultimately was permitted to ask Officer Lomakoski about the federal court's determination to discount his testimony." *See id.* at *9.

The court of appeals addressed Petitioner's claim under the following standards:

> Although [Petitioner] has framed this issue as implicating several of his constitutional rights, the relatively straight-forward issue is whether the trial court properly limited [Petitioner's] cross-examination of Officer Lomakoski. As to [Petitioner's] claim that he was denied the right to present a defense, "[t]here is no doubt that based on the Fourteenth Amendment's Due Process Clause and the Sixth Amendment's Compulsory Process or Confrontation Clauses, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *King*, 297 Mich. App. at 473, 824 N.W.2d 258 (quotation marks and citations omitted). However, even with the constitutional right to present a defense, "an accused must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id.* at 474, 824 N.W.2d 258 (quotation marks and citations omitted). "The Michigan Rules of Evidence do not infringe on a defendant's constitutional right to present a defense unless they are arbitrary or disproportionate to the purposes they are designed to serve." *Id.* (quotation marks and citations omitted).
>
> As to [Petitioner's] claim regarding confrontation, "[t]he Confrontation Clause guarantees only an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *United States v Owens*, 484 U.S. 554, 559, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988) (quotation marks and citation omitted). Stated differently, "[t]he right of cross-examination is not without limit; neither the Confrontation Clause nor due process confers an unlimited right to admit all relevant evidence or cross-

14

examine on any subject." *People v. Adamski*, 198 Mich. App. 133, 138, 497 N.W.2d 546 (1993). The United States Supreme Court has "recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 678–679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986) (quotation marks and citation omitted). In other words, "[a] limitation on cross-examination that prevents a defendant from placing before the jury facts from which bias, prejudice, or lack of credibility of a prosecution witness might be inferred constitutes denial of the constitutional right of confrontation." *People v. Kelly*, 231 Mich. App. 627, 644, 588 N.W.2d 480 (1998).

*Person*, 2021 WL 5143814, at *9–10. The court then applied those standards to reject Petitioner's

claim in the following thorough discussion:

In *Demyers*, the federal case at issue here, the defendant was charged with possession with intent to distribute cocaine and possession of a gun. *Demyers*, unpub. op. at 1. The defendant moved to suppress evidence of a gun and cocaine found after a traffic stop by Officer Lomakoski and Officer Mollie Brooks. *Id.* at 2–3. Officers Lomakoski and Brooks stated that they had pulled the defendant's vehicle over because they saw the defendant making "furtive" gestures. *Id.* at 3. "Specifically, they alleged that [the defendant] reached one hand into the back seat and one hand into the center console." *Id.* After considering all of the evidence, including the officers' conversation during the search, which was recorded on bodycams, the federal court decided to "discount" Officer Lomakoski's testimony. *Id.* at 3–4. In light of the federal court's decision to disbelieve Officer Lomakoski's testimony, the federal court ruled that the police did not have reasonable suspicion to conduct an investigatory stop. *Id.* at 6–7. In a footnote, the federal court specifically stated, "the Court does not believe the officers' testimony regarding [the defendant's] alleged furtive movements." *Id.* at 7 n.2.

Although the trial court indicated that it would limit [Petitioner's] cross-examination regarding *Demyers*, the transcript shows that [Petitioner's] exploration of the facts of that case was relatively thorough. Defendant was permitted to elicit testimony from Officer Lomakoski that his testimony in a similar case had been discounted by a federal court. Further, the discounted testimony occurred in a case involving a young black male, like [Petitioner]. [Petitioner] argues, however, that he was prevented by the trial court from inquiring into three areas: (1) Officer Lomakoski's bias against black men, (2) the federal court's reliance on Officer Lomakoski's bodycam footage to discount his testimony; and (3) Officer Lomakoski's relationship with Officer Brooks.

\* \* \*

[Petitioner] contends that the federal court's ruling shows that Officer Lomakoski is biased against young black men. But the federal court's decision does not reference the defendant's race; although Officer Lomakoski did agree that the

defendant in *Demyers* was black when asked by defense counsel. *Demyers* provides little support for [Petitioner's] claim of bias, other than the mere fact that the defendant was black. In any event, [Petitioner] was not prevented from raising the issue of Officer Lomakoski's alleged bias or relating [Petitioner's] situation to that of the defendant in *Demyers*, but was only limited from excessive exploration of "the background and history" of that case. [Petitioner] does not identify what further information would have been gleaned from such cross-examination that would have strengthened his bias argument. Under the circumstances, the trial court did not abuse its discretion or impair any of [Petitioner's] constitutional rights in limiting cross-examination in that manner. *Van Ar[sd]all*, 475 U.S. at 679, 106 S. Ct. 1431; *Hana*, 447 Mich. at 350, 524 N.W.2d 682; *King*, 297 Mich. App. at 474, 824 N.W.2d 258; MRE 608(b); MRE 611(c).

[Petitioner] also argues that he should have been able to ask about the federal court's reliance on Officer Lomakoski's bodycam footage. As is clear from the transcript, [Petitioner] was permitted to ask that question, and did so at least twice. Further, throughout cross-examination, [Petitioner] asked several questions of Officer Lomakoski about why his bodycam did not show [Petitioner] jaywalking. Officer Lomakoski explained that his shirt was over his bodycam, which was attached to his body armor, so as to avoid being identified as a police officer, considering that he was surveilling [Petitioner's] residence in plain clothes and an unmarked car. [Petitioner] does not explain what other questions [Petitioner] would have asked Officer Lomakoski. The trial court did not abuse its discretion or commit a plain error in violation of [Petitioner's] asserted constitutional rights. *Van Ar[sd]all*, 475 U.S. at 679, 106 S. Ct. 1431; *Hana*, 447 Mich. at 350, 524 N.W.2d 682; *King*, 297 Mich. App. at 474, 824 N.W.2d 258; MRE 608(b); MRE 611(c).

Lastly, [Petitioner] contends that he should have been permitted to inquire about Officer Lomakoski's relationship with Officer Brooks. Considering that Officer Brooks was not involved in the present case and did not testify at the preliminary examination or trial, it is clear that such cross-examination would have been irrelevant.

In sum, the trial court properly allowed [Petitioner] to cross-examine Officer Lomakoski about all relevant topics, including his character for truthfulness, as a result of the federal court's findings. To the extent the trial court did limit cross-examination, such a limitation was not an abuse of discretion or plain error affecting defendant's substantial rights. *Van Ar[sd]all*, 475 U.S. at 679, 106 S. Ct. 1431; *Hana*, 447 Mich. at 350, 524 N.W.2d 682; *King*, 297 Mich. App. at 474, 824 N.W.2d 258; MRE 608(b); MRE 611(c).

*Person*, 2021 WL 5143814, at *10–12.

As an initial matter, an inquiry whether evidence was properly admitted or improperly

excluded under state law "is no part of the federal court's habeas review of a state conviction [for]

it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68. The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). The court of appeals' conclusions that the trial court's evidentiary rulings in question did not violate Petitioner's rights under state law are, therefore, axiomatically correct.

It is possible that an evidentiary ruling—even a ruling that is axiomatically correct under state law—still violates due process. State-court evidentiary rulings can rise to the level of due process violations if they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quotation marks omitted); *accord Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552 (6th Cir. 2000).

Further, under the AEDPA, the court may not grant relief if it would have decided the evidentiary question differently. The court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders*, 221 F.3d at 860; *see also Stewart v. Winn*, 967 F.3d 534, 538 (6th Cir. 2020) (stating that, to obtain habeas relief based on an allegedly improper evidentiary ruling, a petitioner must identify "a Supreme Court case

establishing a due process right with regard to the specific kind of evidence at issue"). Petitioner, however, has not met this difficult standard.

As noted above, Petitioner's claim suggests a violation of the Sixth Amendment's Confrontation Clause, which gives the accused the right "to be confronted with the witnesses against him." U.S. Const. amend VI; *Pointer v. Texas*, 380 U.S. 400, 403–05 (1965) (applying the guarantee to the states through the Fourteenth Amendment). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845 (1990). As the court of appeals correctly stated, while the Confrontation Clause guarantees an opportunity for effective cross-examination, it does not guarantee "cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Van Arsdall*, 475 U.S. at 679; *see also United States v. Adams*, 722 F.3d 788, 834 (6th Cir. 2013); *King v. Trippett*, 192 F.3d 517, 524 (6th Cir. 1999).

Prior to Officer Lomakoski testifying, the trial court ruled that the parties could not ask "about Judge Quist's ruling in the Marcus [Demyers] case." (Trial Tr. II, ECF No. 14-14, PageID.741.) During cross-examination, Petitioner's counsel engaged in the following exchange with Officer Lomakoski:

> Q:   So back to my original question. Has your truthfulness of probable cause been called into question in the past?
>
> A:   Yes. I was in a suppression hearing before.

Q:     In fact, recently in the past year, you have been in a suppression hearing; is that correct?

A:     About year and a half ago.

Q:     About a year and a half ago? And at that time did a federal judge discount your testimony?

A:     Yes.

Q:     That was specifically in regards to finding probable cause to searching another young black male; is that correct?

A:     Yes.

Q:     And, in fact, the evidence in that case was suppressed, correct?

A:     Yes, it was.

Q:     And as part of that case's ruling, did there come about excerpts from a conversation that you had with Officer Brooks?

A:     Yes.

(*Id.*, PageID.764–765.) The prosecutor objected, and the parties held an off the record discussion at the bench. (*Id.*, PageID.765.) Petitioner's counsel and Officer Lomakoski then continued their exchange:

Q:     I will just ramp that up with does discounted mean untruthful?

A:     Discounted? No, not necessarily. I do not—

Q:     But that judge didn't believe you?

A:     That judge gave more credence to the defense than the facts in the case.

Q:     And the video from your body camera?

A:     That was completely twisted around.

Q:     Is that a yes or a no? He gave more credence to the body camera; is that correct?

A:     He gave more credence to the defense and their testimony.

Q:     I'll take that as your answer. In this case, when you say my client jay-walked, you didn't have a body camera on, correct?

19

A:      That's correct.

Q:      But after my client was detained, you were able to rapidly put a body camera on; is that correct?

A:      No. I had my vest on. I had a shirt over my vest, which has the body cam. I was probably here to—well, not quite to the wall away from him, so I'm ducking down in my car. I'm radioing what is going on. He walks out in the middle of traffic. I said: He just jay-walked. He just committed a violation. And my intent was to stay in my car while the troopers made contact with him. But when he ran, that's when I jumped out. I threw my shirt off as soon as I could. I don't know if I even got my shirt off until after he was taken into custody, and then I turned my body camera on.

(*Id.*, PageID.765–766.)

Upon consideration of the foregoing, the court of appeals correctly determined that the limitations the trial court placed on Petitioner's counsel's cross-examination of Officer Lomakoski did not violate Petitioner's Confrontation Clause rights. Petitioner's suggestion that Officer Lomakoski is biased against young black men is simply based upon speculation and the fact that he and the defendant in *Demyers* are both black. Petitioner offers no explanation of what more would have been gleaned by further cross-examining Officer Lomakoski about potential bias. Moreover, despite the trial court's initial ruling that the parties could not inquire as to the *Demyers* case, the record reflects that the trial court ultimately allowed Petitioner's counsel to cross-examine Officer Lomakoski generally about the rulings made in that case. This cross-examination allowed Petitioner's counsel to suggest that Officer Lomakoski has a history of untruthfulness. Counsel then relied on that testimony during closing arguments to suggest that Officer Lomakoski's testimony should be discounted. (Trial Tr. III, ECF No. 14-15, PageID.930.)

In light of the foregoing, the court of appeals' conclusion that the trial court's limitations upon Petitioner's cross-examination of Officer Lomakoski did not violate Petitioner's Confrontation Clause rights was neither contrary to, nor an unreasonable application of, clearly

established federal law, as *Van Arsdall* explicitly authorizes limitations upon cross-examination. Petitioner, therefore, is not entitled to relief with respect to this aspect of habeas ground II.

### C.      Ground III—*Brady* Violation

As his third ground for relief, Petitioner contends that the prosecutor failed to "disclose impeachment evidence of a prior conviction involving dishonesty of a key witness, jailhouse snitch Jermaine Blue." (§ 2254 Pet., ECF No. 1, PageID.8.) He also asserts that counsel was ineffective for failing to impeach Blue with the prior conviction. (*Id.*) The Court considers Petitioner's underlying prosecutorial misconduct claim below and will consider his related assertion of ineffective assistance *infra* in Part III.E.

For a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In evaluating the impact of the prosecutor's misconduct, a court should consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner. *See United States v. Young*, 470 U.S. 1, 11–12 (1985). The Supreme Court has described the *Darden* standard as "a very general one, leaving courts 'more leeway . . . in reaching outcomes in case-by-case determinations.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012). The *Parker* Court rejected an attempt to graft any additional requirements on the "very general" *Darden* standard.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have

substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. 637, 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker*, 567 U.S. at 47 (internal quotation marks omitted).

Petitioner's prosecutorial misconduct claim implicates *Brady v. Maryland*, 373 U.S. 83 (1963). In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. There are three components to finding a *Brady* violation: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Prejudice (and materiality) is established by a showing that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)); *see also Cone v. Bell*, 556 U.S. 449, 469–70 (2009). A reasonable probability equates to a "probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682. Furthermore, the prosecutor "has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

Petitioner raised his *Brady* claim on direct appeal, and the court of appeals rejected it,

stating:

> Here, [Petitioner] states the prosecution should have been aware of Blue's apparent conviction of a crime involving dishonesty. We disagree. Our review of the record shows that the prosecution did not commit a *Brady* violation, because it did not have possession of the allegedly exculpatory evidence, and knowledge of federal documents could not be imputed to the prosecution. In support of his argument, [Petitioner] cites to a document purporting to be a "Judgment in a Criminal Case" from the Western District of Michigan, signed by a federal district judge. The document lists Blue as the defendant, and states that Blue had violated the terms of his supervised release. Specifically, as related to this case, Blue was found to have "committed the offense of Making False Statements to a Federal Officer, in violation of 18 U.S.C. § 1001, a felony punishable by five years' imprisonment and/or a $250,000.00 fine."
>
> [Petitioner] argues that the prosecution should have discovered evidence of Blue's conviction and disclosed it to the defense. In other words, [Petitioner] never asserts that the prosecution actually *had* the above information to give the defense, but only that the knowledge should be imputed to the prosecution. However, the prosecution's responsibility to disclose evidence it does not know about is limited to evidence "known to the others acting on the government's behalf *in the case*, including the police." *Kyles*, 514 U.S. at 437, 115 S. Ct. 1555 (emphasis added); see also *United States v Pelullo*, 399 F.3d 197, 216–218 (3d Cir. 2005) (holding that evidence collected by civil investigators could not be imputed to the prosecution because the civil investigators played no role in the criminal case), and *United States v Morris*, 80 F.3d 1151, 1169–1170 (7th Cir. 1996) (holding that the prosecution had no duty to learn about information held by other agencies, such as the Office of Thrift Supervision, the Securities Exchange Commission, or Internal Revenue Service, because those agencies were not involved in the investigation or prosecution at issue).[]
>
> There is no indication on the record before this Court that the federal government or federal law enforcement officials, which were the only entities [Petitioner] alleges had knowledge of Blue's impeachable conduct, were working on the prosecution or law enforcement's behalf "in the case" involving [Petitioner]. *Kyles*, 514 U.S. at 437, 115 S. Ct. 1555. Considering the above-cited caselaw, we conclude that information held by the federal government and federal law enforcement could not be imputed to the prosecution in this case. Because there is no indication in the record that evidence of Blue's apparent conviction of a crime involving dishonesty was known to the prosecution or "others acting on the government's behalf *in the case*, including the police," *Kyles*, 514 U.S. at 437, 115 S. Ct. 1555 (emphasis added), [Petitioner] has failed to show the first element of a *Brady violation: that the prosecution suppressed evidence, Abcumby-Blair*, —— Mich. App. at ——, —— N.W.2d ——; slip op. at 2. There was no plain error affecting [Petitioner's] substantial rights. *Chenault*, 495 Mich. at 150, 845 N.W.2d 731.

*Person*, 2021 WL 5143814, at *13–14 (footnote omitted).

Public records indicate that on July 12, 2012, Jermaine Blue was sentenced by Judge Jonker of this Court to 144 months' incarceration, followed by 4 years of supervised release, after Blue pleaded guilty to one count of being a felon in possession, in violation of 18 U.S.C. § 922(g)(1). *See* J., *United States v. Blue*, No. 1:11-cr-324 (W.D. Mich.) (ECF No. 37). Subsequently, the Court granted Blue's motion to vacate pursuant to 28 U.S.C. § 2255 after concluding that Blue no longer qualified as an armed career criminal. *See* Op. & Ord., *id.* (ECF No. 44). On March 23, 2016, Judge Jonker resentenced Blue to 84 months' incarceration, to be followed by 3 years of supervised release. *See* J., *id.* (ECF No. 51). More than two years later, on October 5, 2018, Judge Jonker revoked Blue's supervised release because Blue had, *inter alia*, violated 18 U.S.C. § 1001, which criminalizes the making of false statements to a federal officer, on or about September 13, 2018. *See* J., *id.* (ECF No. 84).

Upon review of the record, the Court concludes that the court of appeals' decision is entirely consistent with clearly established federal law. As set forth above, the court of appeals rejected Petitioner's *Brady* claim because Petitioner failed to show that the prosecution or any law enforcement officers working on Petitioner's case were aware of Blue's impeachable conduct. Petitioner fails to correct that deficiency in these proceedings. Petitioner simply speculates that this information was available to the prosecution or that the prosecution should have actively searched for it. However, as set forth above, the prosecution's duty to disclose favorable evidence is limited to evidence "known to others acting on the government's behalf *in the case*, including the police." *Kyles*, 515 U.S. at 437 (emphasis added). Because Petitioner failed to show that the only entities that had knowledge of Blue's conduct noted above—federal authorities—were involved in Petitioner's case, the court of appeals correctly rejected Petitioner's *Brady* claim.

In sum, Petitioner has failed to demonstrate that the court of appeals' rejection of his *Brady* claim was contrary to, or an unreasonable application of, *Brady* and *Kyles.* Petitioner, therefore, is not entitled to relief with respect to this aspect of habeas ground III.

###   D.   Ground IV—Identification Issues

As his final ground for relief, Petitioner contends that his due process and rights to effective assistance of counsel were violated "during the identification process because: (1) the photo lineup was unduly suggestive and unreliable, (2) there was no independent basis for the in-court identification, and (3) counsel should not have allowed the jury to see [Petitioner's] tattoo after proofs were closed." (§ 2254 Pet., ECF No. 1, PageID.8.) The Court considers Petitioner's underlying challenges to the identification procedures below and will consider his related assertion of ineffective assistance *infra* in Part III.E.

Due process provides a "check on the admission of eyewitness identification, applicable when the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime." *Perry v. New Hampshire*, 565 U.S. 228, 232 (2012). As summarized in *Perry*, the Supreme Court has developed a two-part test for determining whether evidence gathered from an eyewitness identification must be excluded from trial due to the unduly suggestive nature of the identification procedure. *Id.* at 238–39 (citing *Neil v. Biggers*, 409 U.S. 188, 196 (1972), and *Manson v. Brathwaite*, 432 U.S. 98, 107 (1997)). First, the *Perry* court stated that "due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Id.* Second, even when the police use such a procedure, suppression of the resulting identification is required only when, under the totality of the circumstances, the "improper police conduct created a 'substantial likelihood of misidentification.'" *Id.* at 239 (quoting *Brathwaite*, 432 U.S. at 116). The central concern in the second part of the inquiry is the reliability of the identification, and whether "the 'indicators of [a

25

witness'] ability to make an accurate identification' are 'outweighed by the corrupting effect' of law enforcement suggestion." *Id.* (quoting *Brathwaite*, 432 U.S. at 114).

### 1.      Photo Lineup

Petitioner first asserts that the photo lineup showed to Flowers was unduly suggestive and unreliable.

As noted above, determining whether a photo lineup was unduly suggestive and unreliable requires a two-step analysis. *See Haliym v. Mitchell*, 492 F.3d 680, 704 (6th Cir. 2007). When determining whether the lineup was unnecessarily suggestive, "the court may consider 'the size of the [photographic] array, the manner of its presentation by the officers, and the details of the photographs themselves.'" *United States v. McComb*, 249 F. App'x 429, 437 (6th Cir. 2007) (citing *United States v. Sanchez*, 24 F.3d 1259 (10th Cir. 1994)); *see also United States v. Wade*, 388 U.S. 218 (1967). The second step of the inquiry requires consideration of a number of factors, including:

> 1) the witness's opportunity to view the criminal at the time of the crime; 2) the witness's degree of attention; 3) the accuracy of the witness's prior description of the criminal; 4) the level of certainty demonstrated at the confrontation; and 5) the time between the crime and the confrontation.

*McComb*, 249 F. App'x at 437 (citing *United States v. Beverly*, 369 F.3d 516 (6th Cir. 2004)); *see also Haliym*, 492 F.3d at 704 (citing *Brathwaite*, 432 U.S. at 114, and *Biggers*, 409 U.S. at 199–200). If "the first step of the requisite analysis ends in the government's favor, [the court] need not address" the second step of the inquiry. *United States v. Stamper*, 91 F. App'x 445, 462 (6th Cir. 2004).

On direct appeal, Petitioner raised numerous challenges to the array, and the court of appeals rejected all of them in a thorough discussion, stating:

> We conclude that the trial court did not clearly err by determining that the pretrial photographic lineup in this case was not unduly suggestive. We have reviewed the photographs used in the lineup procedure and agree with the trial court's finding that the photographs did not render the lineup unduly suggestive. All of the men in

26

the photographs shared some physical characteristics with [Petitioner]. The photograph of [Petitioner] is somewhat blurrier than all of the other photographs, but not to an extent that [Petitioner's] features cannot be discerned. The mere fact that defendant's photograph appears blurrier than the others is not dispositive of suggestiveness. *See Kurylczykz*, 443 Mich. at 304–305, 505 N.W.2d 528 (stating that "differences in the composition of the photographs," does not "render a lineup impermissibly suggestive"). Further, we note that in the video recording of the photographic identification procedure, Flowers set aside [Petitioner's] photograph before she had even seen three of the other photographs. Consequently, at the time she first chose [Petitioner's] photograph, she was not even aware that it was the blurriest.

[Petitioner] also argues that the photographs in the lineup do not match Flowers's description of Suspect 2 given to police. For this argument, [Petitioner] appears to rely on Flowers's description of [Petitioner] at the preliminary examination, during which she said that [Petitioner] had a short haircut and no facial hair. However, the photographic lineup, which happened on November 13, 2017, occurred before the preliminary examination in this case, which occurred on May 3, 2018. Therefore, the police were not privy to that description when creating the photographic array in this case. The police report in existence at the time provided no information about Suspect 2's hair or facial hair. Moreover, the police's responsibility to create a photographic lineup that is not unduly suggestive requires them to include "some photographs that are fairly representative of the defendant's physical features . . . ." *Kurylczykz*, 443 Mich. at 304, 505 N.W.2d 528 (quotation marks and citation omitted). In other words, the police were required to choose photographs of individuals who look like [Petitioner], not photographs of people who fit Flowers's description of the suspect. *Id.*

[Petitioner] also argues that the trial court erred by failing to hold that the lineup procedure was unduly suggestive. We disagree. When it decided those arguments, the trial court reviewed the video of the procedure and a form provided to Flowers containing the following instructions:

- • I am going to show you a group of photographs.

- • The fact that the photographs are shown to you should not influence your judgment.

- • You should neither conclude nor guess that the photographs contain a picture of the person who committed the crime.

- • You do not have to identify anyone.

- • It is just as important to free innocent persons from suspicion as it is to identify those who are guilty.

- • Please keep in mind that hair styles, beards, and moustaches are easily changed.

27

• Photographs do not always depict the true complexion of a subject., i.e., they may be lighter or darker.

• Please do not discuss the case with other witnesses or indicate in any way to other witnesses whether you have identified someone.

• If you pick a photograph, I will record the number of the picture and folder you selected in the space below. You will be asked to verify that for accuracy.

Flowers signed the document acknowledging that she understood the instructions. Detective Larson then proceeded to the photographic lineup, which was recorded.

We have reviewed the video and agree with the trial court's finding that the process was not unduly suggestive in any way. Detective Larson read Flowers the instructions on the form, Flowers flipped through the photographs, stopped when she got to [Petitioner's] photograph and set it aside, finished going through the remaining photographs, and then returned to [Petitioner's] photograph. After staring at the photograph for an additional 20 seconds, Flowers said, "This looks like it could be the one, um, that kept taking his mask off." Detective Larson was looking down at other papers during the entire process, and only looked up when Flowers made her identification. Detective Larson then recorded [] Flowers's statement in writing.

[Petitioner] argues that the lineup process was unduly suggestive because it occurred about one month after the robbery, and that Flowers's memory had likely faded over time. [Petitioner,] however, does not suggest how the length of time between the robbery and the identification rendered the photographic lineup unduly suggestive. *Colon*, 233 Mich. App. at 304, 591 N.W.2d 692. Further, in *Kurylczyk*, 443 Mich. at 307, 505 N.W.2d 528, our Supreme Court noted that "[c]ourts have held that delays as long as eighteen months after a crime do not invalidate an eyewitness identification." [Petitioner's] argument is not persuasive.

[Petitioner] also argues that the photographic lineup was unduly suggestive because Detective Larson did not use a double-blind procedure. In other words, [Petitioner] suggests that, because Detective Larson knew that defendant was a suspect, she may have done something to encourage Flowers to choose [Petitioner's] photograph. However, after a thorough review of the video of the procedure, the trial court found that Detective Larson did not do anything that might have caused Flowers to feel that she should pick [Petitioner's] photograph. This Court's review of the video does not leave us with a definite and firm conviction that the trial court made a mistake in this finding. *Blevins*, 314 Mich. App. at 348, 886 N.W.2d 456.[]

*Person*, 2021 WL 5143814, at *16–17 (footnote omitted).

Here, Petitioner merely relies upon the arguments regarding the photo array that he raised—and that have been rejected—in the state courts. He offers no evidence to plausibly show that the photographs themselves were problematic or that the presentation of the array by Detective Larson was problematic. Although the photograph of Petitioner may have been a bit blurrier than the others, there is absolutely no case law supporting a conclusion that a photo array becomes unduly suggestive simply because of that factor. *Cf. Mitchell v. Goldsmith*, 878 F.2d 319, 323 (9th Cir. 1989) (rejecting the argument that the photo array was unduly suggestive because the petitioner was the only person photographed against a blue background); *United States v. Novo*, No. 08-96-P-H, 2008 WL 43727312, at *3 (D. Me. Sept. 19, 2008) (collecting cases standing for the proposition that "[r]elatively minor differences in backgrounds and/or physical characteristics do not suffice to support" a claim that a photo array is unduly suggestive). Moreover, notably, Flowers set aside Petitioner's photograph even before she had viewed three of the other photographs. Petitioner simply fails to demonstrate any error in the court of appeals' conclusion that the array was not unduly suggestive. Because Petitioner fails to meet the first step of the inquiry, the Court will not address the second step. *See Stamper*, 91 F. App'x at 462.

Petitioner also asserted on direct appeal that the photo array was "impermissible and inadmissible because it was not a corporeal lineup." *Person*, 2021 WL 5143814, at *18. While the Supreme Court has acknowledged that a corporeal identification is usually more accurate than a photographic one, the Court affirmed the propriety of photo arrays, explicitly declining "to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement." *Simmons v. United States*, 390 U.S. 377, 384 (1968). Thus, a criminal defendant simply has no constitutional right to a corporeal lineup. *See Payne v. Smith*, 207 F. Supp. 2d 627, 645 (E.D. Mich. 2002) (collecting cases). Petitioner's suggestion otherwise lacks merit.

29

Petitioner also argued on direct appeal that the photo array was inadmissible because "his counsel was not present during the process." *Person*, 2021 WL 5143814, at *18. The Sixth Amendment guarantees a right to counsel at all critical stages of a criminal proceeding. *Montejo v. Louisiana,* 556 U.S. 778, 786 (2009). However, the Supreme Court has consistently held that "a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." *Kirby v. Illinois*, 406 U.S. 682, 689–90 (1972) (refusing to extend the right to counsel to a preindictment corporeal lineup).

In *United States v. Wade*, 368 U.S. 218 (1967), the Supreme Court recognized that a post-indictment corporeal lineup was a critical stage of the prosecution at which the accused was entitled to the aid of counsel. *Id.* at 237. However, six years later, the Supreme Court expressly rejected the proposition that a defendant had a Sixth Amendment right to counsel at any photographic lineup, regardless of whether it was conducted pre- or post-indictment. *United States v. Ash*, 413 U.S. 300, 321 (1973) (noting that the accused is not present at a photographic lineup). Instead, in the context of photographic lineups, the rights of the accused are primarily protected by the Due Process Clause, not the Sixth Amendment. *Id.* at 320.

The Michigan Court of Appeals rejected Petitioner's argument, stating:

> [Petitioner's] argument that the photographic lineup was impermissible and inadmissible because it was not a corporeal lineup and because his counsel was not present during the process is similarly unpersuasive. Relying on overruled caselaw from our Supreme Court, *People v. Anderson*, 389 Mich. 155, 205 N.W.2d 461 (1973), overruled by *People v Hickman*, 470 Mich. 602, 684 N.W.2d 267 (2004), [Petitioner] contends that he was entitled to have a corporeal lineup because he was in custody related to the Brown case, and that his counsel should have been present because counsel had already been appointed in the Brown case. This Court, in *People v. Perry*, 317 Mich. App. 589, 596–598, 895 N.W.2d 216 (2016), has recently addressed and rejected a nearly identical argument. The same result is compelled here. MCR 7.215(J)(1). Consequently, [Petitioner's] arguments in his Standard 4 brief regarding those issues lack merit and do not warrant suppression of the pretrial photographic lineup identification or have any effect on the in-court identification. *Id.*

*Person*, 2021 WL 5143814, at \*18. Under the authority set forth *supra*, Petitioner's challenge to the admissibility of the photo array is barred. Under *Ash*, Petitioner had no right to have counsel present at the photo array, regardless of whether it was conducted pre- or post-indictment. *See Ash*, 413 U.S. at 321.

For all of the foregoing reasons, Petitioner has not demonstrated that the court of appeals' rejection of his challenges to the photo array were contrary to, or an unreasonable application of, clearly established federal law. Petitioner, therefore, is not entitled to habeas relief with respect to any assertions of constitutional error regarding the photo array.

### 2.     In-Court Identification

Petitioner also takes issue with Flowers' in-court identification of Petitioner, arguing that there was no independent basis for the identification. During direct examination, Flowers identified Petitioner as the individual who had taken items out of her safe. (Trial Tr. II, ECF No. 14-14, PageID.691.) On direct appeal, the Michigan Court of Appeals rejected Petitioner's challenge to the in-court identification, noting that "because there was no taint from the pretrial identification, [Petitioner] has no claim to challenge Flowers's in-court identification of [Petitioner]." *Person*, 2021 WL 5143814, at \*18.

With respect to in-court identifications, the Supreme Court has acknowledged that such identifications are inherently "suggestive." *See Perry*, 556 U.S. at 244 (noting that "[m]ost eyewitness identifications involve some element of suggestion. Indeed, all in-court identifications do"). However, the fact that an identification procedure is suggestive does not, standing alone, implicate due process protections. *See id.* at 239. Instead, there must be "improper law enforcement activity" before a suggestive identification requires further scrutiny. *See id.* Simply because *Perry* noted that in-court identifications may be a type of suggestive identification does not implicate due process protections. And, because Petitioner has not shown any evidence of "improper law

enforcement activity" here, the Court cannot agree with Petitioner that any constitutional error based upon Flowers' in-court identification occurred.

In sum, because Petitioner has failed to demonstrate that the court of appeals' rejection of his claims regarding the identification procedures was contrary to, or an unreasonable application of, clearly established federal law, Petitioner is not entitled to relief with respect to this aspect of habeas ground IV.

### E. Grounds Asserting Ineffective Assistance of Counsel

As noted above, as part of his second ground for relief, Petitioner contends that the trial court was ineffective "to the extent he did not specifically cite bias and a reasonable basis why he should have been allowed to fully cross-examine Mr. Lomakoski." (§ 2254 Pet., ECF No. 1, PageID.8.) As part of his third ground for relief, Petitioner avers that counsel was ineffective for "failing to impeach the jailhouse snitch with his prior conviction." (*Id.*) Finally, as his last ground for relief, Petitioner argues that counsel was ineffective during the identification process "because: (1) the photo lineup was unduly suggestive and unreliable, (2) there was no independent basis for the in-court identification, and (3) counsel should not have allowed the jury to see [Petitioner's] tattoo after proofs were closed." (*Id.*)

### 1. Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the [Petitioner] resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The [Petitioner] bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the [Petitioner] is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013); *Cullen*, 563 U.S. at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011). Scrutiny of counsel's performance is "highly deferential", per *Strickland*, to avoid the temptation to second guess a strategy after-the-fact and to "eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689. Furthermore, scrutiny of the state court's scrutiny of counsel's performance must also be deferential, per 28 U.S.C. § 2254(d). In light of that double deference, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740–41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . ." (citing *Harrington*, 562 U.S. at 102)).

Petitioner raised his ineffective assistance claims on direct appeal, and the Michigan Court of Appeals addressed them under the following standard:

> "Criminal defendants have a right to the effective assistance of counsel under the United States and Michigan Constitutions." *Schrauben*, 314 Mich. App. at 189-190, 886 N.W.2d 173 (citing U.S. Const., Am. VI; Const. 1963, art. 1, § 20). "However, effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *Schrauben*, 314 Mich. App. at 190, 886 N.W.2d 173. The United States Supreme Court has held that "in order to receive a new trial on the basis of ineffective assistance of counsel, a defendant must establish that 'counsel's representation fell below an objective standard of reasonableness' and that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *People v. Vaughn*, 491 Mich. 642, 669, 821 N.W.2d 288 (2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). "When reviewing defense counsel's performance, the reviewing court must first objectively 'determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.'" *Jackson*, 313 Mich. App. at 431, 884 N.W.2d 297 (quoting *Strickland*, 466 U.S. at 690, 104 S. Ct. 2052). "Next, the defendant must show that trial counsel's deficient performance prejudiced his defense—in other words, that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Jackson*, 313 Mich. App. at 431, 884 N.W.2d 297 (quoting *Vaughn*, 491 Mich. at 669, 821 N.W.2d 288).

*Person*, 2021 WL 5143814, at *12. Although the court of appeals primarily cited to state authority, the *Vaughn* case explicitly quotes *Strickland* as the source of the standard. Thus, there is no question that the court of appeals applied the correct standard.

The court of appeals' application of the correct standard eliminates the possibility that the resulting decision is "contrary to" clearly established federal law. As the Supreme Court stated in *Williams v. Taylor*:

> The word "contrary" is commonly understood to mean "diametrically different," "opposite in character or nature," or "mutually opposed." Webster's Third New International Dictionary 495 (1976). The text of § 2254(d)(1) therefore suggests that the state court's decision must be substantially different from the relevant precedent of this Court. The Fourth Circuit's interpretation of the "contrary to" clause accurately reflects this textual meaning. A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases.

*Williams*, 529 U.S. at 405. The Court went on to offer, as an example of something that is not "contrary to" clearly established federal law, the following:

[A] run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s "contrary to" clause. Assume, for example, that a state-court decision on a prisoner's ineffective-assistance claim correctly identifies *Strickland* as the controlling legal authority and, applying that framework, rejects the prisoner's claim. Quite clearly, the state-court decision would be in accord with our decision in *Strickland* as to the legal prerequisites for establishing an ineffective-assistance claim, even assuming the federal court considering the prisoner's habeas application might reach a different result applying the *Strickland* framework itself. It is difficult, however, to describe such a run-of-the-mill state-court decision as "diametrically different" from, "opposite in character or nature" from, or "mutually opposed" to *Strickland*, our clearly established precedent. Although the state-court decision may be contrary to the federal court's conception of how *Strickland* ought to be applied in that particular case, the decision is not "mutually opposed" to *Strickland* itself.

*Id.* at 406. Therefore, Petitioner can only overcome the deference afforded state court decisions if the court of appeals' determinations were based on an unreasonable application of *Strickland* or if the court of appeals' resolutions were based on unreasonable determinations of the facts. *See* 28 U.S.C. § 2254(d).

### 2.   **Ground II—Confrontation Issue**

As part of habeas ground II, Petitioner suggests that "trial counsel was ineffective to the extent he did not specifically cite bias and a reasonable basis why he should have been allowed to fully cross-examine Mr. Lomakoski." (§ 2254 Pet., ECF No. 1, PageID.8.) The court of appeals rejected this assertion on direct appeal:

As stated, the trial court permitted defense counsel to inquire into the outcome of *Demyers* and the federal court's findings regarding Officer Lomakoski's credibility, and to elicit that the defendant in *Demyers* was a young black man. [Petitioner] has not explained what further evidence could have been gleaned from additional questioning of Officer Lomakoski regarding *Demyers.* Therefore, an argument to allow for further cross-examination on that topic would have lacked merit. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v. Savage*, 327 Mich. App. 604, 617, 935 N.W.2d 69 (2019) (quotation marks and citation omitted).

*Person*, 2021 WL 5143814, at *12.

The court of appeals' conclusion is entirely consistent with clearly established federal law. As discussed *supra* in Part III.B, the limitations placed upon cross-examination of Officer Lomakoski did not violate Petitioner's Confrontation Clause rights. Moreover, Petitioner's assertion of bias is based upon sheer speculation, as the *Demyers* case did not involve any findings of bias. "[O]mitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013); *see also Mahdi v. Bagley*, 522 F.3d 631, 638 (6th Cir. 2008) ("No prejudice flows from the failure to raise a meritless claim."). Petitioner, therefore, is not entitled to relief with respect to this portion of habeas ground II.

### 3.    Ground III—Failure to Impeach Jailhouse Snitch

As part of habeas ground III, Petitioner faults counsel for "failing to impeach the jailhouse snitch [Blue] with his prior conviction." (§ 2254 Pet., ECF No. 1, PageID.8.) Petitioner raised this claim on direct appeal, and the court of appeals rejected it, stating:

> As discussed, the evidence in question involved Blue's apparent conviction of a crime involving dishonesty—lying to a federal officer in violation of 18 U.S.C [§] 1001. The record does not reveal whether [Petitioner's] trial counsel ever discovered the conviction or decided not to use it during his cross-examination of Blue. Assuming, without deciding, that trial counsel's failure to either discover or use the evidence in question was objectively unreasonable, [Petitioner] still cannot demonstrate that his counsel's failure was outcome determinative.
>
> During Blue's cross-examination, [Petitioner's] trial counsel significantly and effectively undermined Blue's credibility. The jury was made aware that Blue was a federal prisoner during his testimony. Additionally, trial counsel focused on the information included in Blue's letter to Flowers, hoping to convince the jury that Blue had obtained the facts of the home invasion from police records [Petitioner] had in jail with him, rather than via a confession from [Petitioner]. To do so, trial counsel engaged in an inventive strategy, beginning with asking Blue to repeat a set of numbers and letters. Trial counsel then asked Blue about [Petitioner's] confession, including what information [Petitioner] allegedly had provided to Blue. Blue testified [Petitioner] had confessed to very specific facts about his robbery of Flowers. Trial counsel, after a few minutes of questioning, then asked Blue to recite the set of letters and numbers he had provided at the beginning of cross-examination. When Blue was unable to do so, trial counsel asked about Blue's inclusion of Flowers's complete social security number, as well as the make and model of her gun, in his letter to her. Blue attempted to explain his inability to

memorize the numbers provided by trial counsel by stating that [Petitioner] had repeatedly stated the other numbers over the course of a long period of time, an explanation the jury could easily have found difficult to believe.

Trial counsel also established that Blue had a reason to lie in the case, i.e., his apparent romantic interest in Flowers. Blue testified that he heard from Flowers that "someone did a home invasion and robbed her"; in other words, he did not testify that he learned of the home invasion from [Petitioner], but rather that he first learned of the home invasion from Flowers, and only later learned of [Petitioner's] involvement. Blue also testified on direct examination that he knew Flowers because they "[g]rew up together," and denied on cross-examination knowing anything about her exotic dancing. However, Flowers testified that she only knew Blue from her work as an exotic dancer, and trial counsel established that Blue, in his letter recounting [Petitioner's] alleged confession, had asked Flowers to visit him in federal prison. While Blue denied any romantic interest, the implication from the testimony was clear. The jury could have concluded that Blue had a motive to lie to involve himself further with Flowers or increase his standing with her.

During his closing argument, trial counsel continued to undercut Blue's credibility. He noted Blue's claim that he did not know Flowers as an exotic dancer, despite her testimony that she only knew him from her work. Trial counsel also referenced Officer Lomakoski's testimony that his police report had contained Flowers's social security number and the make and model of her gun. Trial counsel posited to the jury that Blue could have obtained the information from the police report and pointed out Blue's inability to remember, even briefly, a set of numbers. Trial counsel also argued that Blue likely was lying so that Flowers would come to visit him in prison.

Although [Petitioner] was ultimately convicted, he has not demonstrated that proof that Blue had committed a crime involving dishonesty would have changed the outcome of trial, in light of the significant damage to Blue's credibility done by defense counsel's cross-examination and arguments. The jury had already been provided with several reasons to distrust Blue, including his inability to recall specific numbers, a motive to lie, and that his statements were inconsistent with Flowers's claims about how they knew each other. Therefore, [Petitioner] has failed to prove "that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Jackson*, 313 Mich. App. at 431, 884 N.W.2d 297 (quoting *Vaughn*, 491 Mich. at 669, 821 N.W.2d 288).

*Person*, 2021 WL 5143814, at *14–15.

The court of appeals' summary of Petitioner's counsel's cross-examination of Blue is entirely consistent with the record before this Court. (*See* Trial Tr. III, ECF No. 14-15, PageID.856–862.) Petitioner has failed to present clear and convincing evidence to rebut the

presumption of reasonableness attributed to the court of appeals' conclusion for how Petitioner was not prejudiced by counsel not impeaching Blue with his prior conviction for making false statements to a federal officer. *See* 28 U.S.C. § 2254(e)(1). As noted by the court of appeals, Petitioner's counsel did "significant damage" to Blue's credibility during cross-examination and closing arguments. Petitioner does not demonstrate that the outcome of his trial would have differed had counsel further called Blue's credibility into question via the prior conviction.

In sum, Petitioner has not shown that the court of appeals' rejection of this claim of ineffective assistance was contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief with respect to this aspect of habeas ground III.

### 4.    Ground IV—Identification Procedures

As his final ground for relief, Petitioner contends that his due process and rights to effective assistance of counsel were violated "during the identification process because: (1) the photo lineup was unduly suggestive and unreliable, (2) there was no independent basis for the in-court identification, and (3) counsel should not have allowed the jury to see [Petitioner's] tattoo after proofs were closed." (§ 2254 Pet., ECF No. 1, PageID.8.)

Petitioner provides no further argument in support of his assertion of ineffective assistance and instead appears to rely upon the arguments he raised on direct appeal before the Michigan Court of Appeals. On direct appeal, Petitioner argued that counsel was "ineffective for failing to obtain an expert witness in the field of eyewitness identification and permitting the jury to look at [Petitioner's] hand after the prosecution's close of proofs." *Person*, 2021 WL 5143814, at *15. He also faulted counsel for not raising numerous arguments when moving to suppress the identification of Petitioner that Petitioner asserted in a *pro per* supplemental brief. *See id.*

38

### a.    Expert Testimony

Petitioner first suggests that counsel was ineffective for failing to obtain an expert witness

in the field of eyewitness identification. The court of appeals rejected this argument, stating:

> [Petitioner] also argues that his trial counsel was ineffective for failing to obtain an expert witness regarding eyewitness identification. The decision whether or not to call a witness is generally a matter of trial strategy, and "[w]e will not substitute our judgment for that of counsel regarding matters of trial strategy, nor will we assess counsel's competence with the benefit of hindsight." *Blevins*, 314 Mich. App. at 351, 886 N.W.2d 456. Further, [Petitioner] has failed to establish the factual predicate for his claim. *People v. White*, 331 Mich. App. 144, 148, 951 N.W.2d 106 (2020). Although [Petitioner] names a potential expert witness who, hypothetically, could have been retained by defense counsel, [Petitioner] has not shown, via offer of proof or otherwise, that this expert would have testified favorably in this case. *Id.*

> Additionally, the mere fact that an expert on eyewitness testimony *could have* been called does not mean that trial counsel's performance was deficient for failing to do so. *Blevins*, 314 Mich. App. at 351, 886 N.W.2d 456 (citing *People v Petri*, 279 Mich App 407, 412–413, 760 N.W.2d 882 (2008)). Trial counsel's decision to rely on cross-examination to challenge a witness's identification has been found to be objectively reasonable. *Id.* In this case, trial counsel raised numerous issues with Flowers's identification, including differences in her prior statements describing [Petitioner], the fact that she had independently located [Petitioner] on Facebook after receiving a letter from Blue, her initial hesitancy when viewing the photographic lineup, and the fact that other witnesses described [Petitioner'] hair and facial hair differently. This strategy, although ultimately unsuccessful, was not objectively unreasonable. *Id.*

*Person*, 2021 WL 5143814, at *18.

The court of appeals' determination tracks with clearly established federal law. The

Supreme Court has recognized that "[t]he selection of an expert witness is a paradigmatic example

of the type of 'strategic choic[e]' that, when made 'after a thorough investigation of [the] law and

facts,' is 'virtually unchallengeable.'" *Hinton v. Alabama*, 571 U.S. 263, 275 (2014) (quoting

*Strickland*, 466 U.S. at 690). Here, there is no record evidence suggesting that Petitioner's counsel

did not investigate the possibility of obtaining expert testimony regarding identifications and their

reliability. Absent such support, Petitioner cannot overcome the presumption that counsel's actions fell within "the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

In any event, Petitioner fails to offer support for his belief that an expert existed who was willing to testify and whose testimony would have been favorable to Petitioner's defense. Without some record support for Petitioner's contention, it is impossible for Petitioner to show that his counsel was professionally unreasonable for failing to pursue such expert testimony or that it made any difference in the result. "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." *United States v. Ashimi*, 932 F.2d 643, 650 (6th Cir. 1991) (footnote omitted); *see also Lagrone v. Parris*, No. 23-5177, 2023 WL 5623279, at *4 (6th Cir. Aug. 7, 2023) ("Lagrone did not identify an expert his trial counsel could have called or indicate what an expert could have testified that would have been relevant to his defense. The speculative impact of expert testimony is not enough to prove prejudice under *Strickland*."); *Pillette v. Berghuis*, 408 F. App'x 873, 887 (6th Cir. 2010) (stating that "[t]he salient point is that nobody knows what she would have said. Speculation cannot suffice to establish the requisite prejudice.").

In any event, as discussed *supra*, the court of appeals properly noted that the victim's identifications of Petitioner were admissible. Given that fact, Petitioner has not demonstrated that any expert testimony regarding the reliability of eyewitness identifications would have changed the result of his trial in any way. Because Petitioner has not demonstrated that the court of appeals' conclusion was contrary to, or an unreasonable application of, *Strickland*, he is not entitled to habeas relief with respect to this assertion of ineffective assistance.

**b.      Tattoo on Petitioner's Hand**

Petitioner also faults counsel for allowing the jury to see the tattoo on his hand after proofs were closed. The court of appeals rejected this assertion of ineffective assistance, stating:

Flowers had described a tattoo on the hand of Suspect 2 during her testimony, and testified that it matched a photograph of the tattoo on [Petitioner's] hand she had seen on Facebook. Flowers also stated, in response to defense counsel's questioning, that she had a tattoo on her hand in nearly the same spot, agreeing that it was a popular place to have a tattoo. Detective Larson testified that [Petitioner] had a tattoo on his hand. The jury, after the close of proofs, submitted a question to the trial court regarding whether it could see a photograph of the tattoo on [Petitioner's] hand.

In light of the testimony of Flowers and Detective Larson, trial counsel was aware that the jury already knew, at the time it made its request, that [Petitioner] had a tattoo on his hand. Instead of attempting to hide such knowledge from the jury, trial counsel chose a strategy of downplaying the tattoo's uniqueness and eliciting testimony from Flowers that many people have tattoos in that location. Therefore, it was an objectively reasonable trial strategy to allow the jury to see [Petitioner's] hand (in lieu of a photograph); [Petitioner] did not deny having a tattoo there and testimony established that he had one, and to refuse to show his hand might be considered by jurors to be hiding something. We do not second-guess matters of trial strategy merely because they were unsuccessful. *Muhammad*, 326 Mich. App. at 66, 931 N.W.2d 20 (quotation marks and citation omitted).

In any event, the record shows that the jury was already well aware [Petitioner] had a tattoo on his hand before he showed it to them. [Petitioner] has not demonstrated that refusing to show the jury his tattoo would have been outcome-determinative. *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052.

*Person*, 2021 WL 5143814, at *19.

Petitioner offers nothing further in support of this assertion of ineffective assistance and instead relies upon the arguments he raised on direct appeal—arguments that have already been rejected by the state courts. At trial, Flowers testified that during the robbery, she saw that Petitioner had a tattoo on his hand, and that she noticed the same tattoo on Petitioner at a previous hearing. (Trial Tr. II, ECF No. 14-14, PageID.700–701.) On cross-examination, Flowers testified that she saw a picture of Petitioner with the same tattoo on Facebook. (*Id.*, PageID.718.) After proofs closed, but before the trial court gave final jury instructions, juror number 12 asked if the jury could see a picture of Petitioner's hand. (Trial Tr. III, ECF No. 14-15, PageID.947.) The trial court stated: "No pictures. But we are going to have [Petitioner] stand up and show it to you. Can you see it? You can go up closer so they can see what it is, all right?" (*Id.*, PageID.947–948.)

41

In light of the foregoing, the court of appeals' determination entirely tracks with *Strickland*. The jury had already heard testimony that Petitioner had a tattoo on his hand, and there was no testimony suggesting otherwise. Given the other evidence supporting Petitioner's guilt, Petitioner has not demonstrated that he was prejudiced by counsel's failure to object to having Petitioner show the jury his tattoo, as he has not shown that the outcome of his trial would have been different. Petitioner, therefore, is not entitled to relief with respect to this assertion of ineffective assistance.

### c. Failure to Raise Additional Arguments

To the extent Petitioner faults counsel for failing to raise additional arguments in support of the motion to suppress the identifications of Petitioner, he fails to state a meritorious claim. On direct appeal, the court of appeals noted that because the "photographic lineup and procedure were not unduly suggestive, trial counsel was not ineffective for failing to raise the arguments [Petitioner] raises on appeal, to the extent counsel did fail to raise these arguments." *Person*, 2021 WL 5143814, at *18. As discussed above, the court of appeals' conclusion that the identifications were not unduly suggestive is entirely consistent with federal law, and counsel cannot be ineffective for failing to raise meritless arguments. *See Coley*, 706 F.3d at 752; *Mahdi*, 522 F.3d at 638. Petitioner, therefore, is not entitled to relief with respect to this assertion of ineffective assistance.

In sum, Petitioner has not demonstrated that the court of appeals' conclusion that trial counsel did not render ineffective assistance with regard to the identification procedures used was contrary to, or an unreasonable application of, *Strickland*. Petitioner, therefore, is not entitled to relief with respect to this aspect of habeas ground IV.

F.      Summary

In sum, none of the grounds Petitioner sets forth in his § 2254 petition entitle him to federal habeas relief. Accordingly, Petitioner's § 2254 petition will be denied for failure to raise a meritorious federal claim.

The Court notes that, in his reply, Petitioner appears to assert a fifth ground for relief—that the cumulative effect of the errors noted in the four grounds asserted in his § 2254 petition deprived Petitioner of due process. (ECF No. 16, PageID.3833.) Petitioner's reply and other documents filed after Respondent filed his answer also appear to assert several other claims for relief. Petitioner, however, did not seek leave to amend his § 2254 petition to assert any further grounds, and it is well accepted that a party "cannot raise new issues in a reply brief[;] he can only respond to arguments raised for the first time in [the opposing party's] brief." *United States v. Campbell*, 279 F.3d 392, 401 (6th Cir. 2002).

The Court is satisfied that no errors rising to the level of constitutional violations occurred during Petitioner's criminal proceedings. Moreover, under the AEDPA, a court may only grant habeas relief based on a misapplication of Supreme Court law. *See Bailey*, 271 F.3d at 655. The Sixth Circuit has noted that "[i]ndividually non-prejudicial errors, when taken together, may result in a fundamentally unfair trial that violates a defendant's due process rights." *United States v. Stuckey*, 253 F. App'x 468, 492 (6th Cir. 2007) (citing *United States v. Pierce*, 62 F.3d 818, 834–35 (6th Cir. 1995)); *see also Cockream v. Jones*, 382 F. App'x 479, 486 (6th Cir. 2010) (noting that "only actual *errors* may combine to generate cumulative prejudice"); *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004) (setting forth that aggregated harmless errors require reversal in situations where "the combined effect . . . was too prejudicial as to render [a] trial fundamentally unfair"). However, because Petitioner's individual claims lack merit, Petitioner cannot show that any cumulative error violated his constitutional rights. *See Seymour*, 224 F.3d at 557.

43

## V.      Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

**<u>Conclusion</u>**

The Court will enter an order and judgment denying the § 2254 petition, a certificate of

appealability, and Petitioner's motions for a hearing and for relief from judgment (ECF Nos. 17,

23).


Dated:   <u>August 28, 2024</u>                         <u>/s/ Paul L. Maloney</u>
                                                                      Paul L. Maloney
                                                                      United States District Judge